# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **EDWIN GUS SCHNEIDER** | § | |
| | § | |
| **V.** | § | **A-16-CA-0468-LY-AWA** |
| | § | |
| **LORIE DAVIS** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner is pro se and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Document 1), Respondent's Answer (Document 12), and Petitioner's Reply (Document 16). For the reasons set forth below, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus be denied.

## BACKGROUND

Respondent has custody of Petitioner pursuant to judgments and sentences imposed by the 26th Judicial District Court of Williamson County, Texas. A jury found Petitioner guilty on two counts of aggravated robbery and he was sentenced to concurrent terms of life imprisonment. Petitioner contends he is entitled to habeas relief because the trial court erred by failing to sever the

counts for trial, because the prosecution violated *Brady v. Maryland*, and because a Texas Court of Appeals' opinion contained an incorrect statement of fact.

## STATEMENT OF THE CASE

**A.      Factual Background**

The Texas Court of Appeals described the evidence presented at Petitioner's trial as follows:

Morgan Hunter testified that on June 5, 2010, she was working as a bank teller at Regions Bank in Round Rock, Texas. At approximately 10:30 a.m., a man later identified as Schneider entered the bank and walked up to her teller station. He was carrying two bags, one in each hand. One bag was a small black and orange bag; the other was a white, translucent shopping bag, "like a plastic Wal-Mart bag." Schneider handed Hunter the black bag and placed the plastic bag on the counter. He stated, "This is a f***king robbery. Put the money in the bag." He repeated, "This is a robbery." Schneider kept his hand on the plastic bag, which appeared to contain something heavy. Although Hunter could not see inside the bag, based on the shape of the object within she determined that it was "a gun or some kind of weapon."

Hunter was frightened but began complying when Schneider leaned forward and again told her, "This is a robbery; put the money in the bag." She placed her teller money in the black bag, and Schneider warned her, "no bait money." When she was finished, Hunter handed Schneider the black bag. He grabbed the white shopping bag off the counter and left the bank. Hunter could see that the object in the white bag was black. She testified to the jury that during the robbery she was scared that Schneider would hurt her if she did not do as he said. A few days after the robbery, a police officer came to the bank and showed Hunter a photo lineup, from which she positively identified Schneider as the person who robbed the bank on June 5.

Stephanie Velasquez was assisting a customer at the drive through window when Schneider entered the bank. She heard Hunter greet the customer, and then saw her step back with her hands up. She heard the customer tell Hunter to "Come here," and realized a robbery was in progress. Velasquez saw that Schneider had a white plastic bag with something black in it, which she assumed was a weapon.

Albert Robles testified that on June 30, 2010, he was working as a bank teller at a Bank of America branch location in Round Rock, Texas. A man later identified as Schneider entered the bank and appeared to be nervous and sweating. When Robles asked Schneider how he was doing, Schneider did not respond. Instead, he told Robles, "Listen here, this is a bank robbery. And as long as you do everything I tell you to do, you won't get hurt. And I do have a gun." Robles did not see a gun,

but Schneider had his left hand in his waistband, and Robles thought that was where he had the gun. Schneider handed Robles a bag and told him to give him all the money in the teller drawer. Robles took the money out of his drawer, put it in the bag, and handed Schneider the bag. Schneider left the bank. Robles locked the front door of the bank and triggered the alarm. When police arrived, they showed Robles a photo lineup and he positively identified Schneider as the person who robbed the bank. The jury was shown footage from the surveillance equipment of Schneider robbing the bank.

*** 

Evette Garcia testified that she saw Schneider on June 9, 2010. Although she did not explain where she saw him, Garcia stated that she saw him "in possession of what appeared to be a firearm in a translucent white grocery-type bag." The jury also was shown an exhibit of a photograph of Schneider as she saw him that day, walking through a building lobby holding a gun in his hand with a translucent bag around it. Schneider's finger appears to be on the trigger of the gun.

*Schneider v. State*, 440 S.W.3d 839, 842-43 (Tex. App.–Austin 2013, pet. ref'd).

## B.    Petitioner's State Court Proceedings

A grand jury returned an indictment on September 2, 2010, charged Petitioner with two counts of aggravated robbery occurring in Williamson County, Texas, with a deadly weapon notice. The indictment also charged Petitioner was a habitual offender, alleging prior convictions for manufacture of methamphetamine, possession of a controlled substance, burglary of a habitation, unauthorized use of a motor vehicle, and credit card abuse. Document 13, Exh. 59 at 105-06.

Petitioner sought to waive his right to counsel and to represent himself during his criminal proceedings. The state trial court conducted a hearing on this request on October 18, 2010, and allowed Petitioner to proceed pro se. *Id.*, Exh. 3 at 5. At a hearing on February 3, 2011, the trial court discussed Petitioner's request for hybrid representation. *Id.*, Exh. 5. The trial court noted the potential penalty Petitioner faced if he was found guilty as charged on both counts of the indictment and if the enhancements were found true: "And under those circumstances, if they are able to prove

those allegations, that your range of punishment, would be enhanced to a minimum of 25 years, up to 99 years or life in prison." *Id.*, Exh. 5 at 6. Petitioner averred that he was knowingly waiving his right to counsel. *Id.*, Exh. 5 at 7-8. The court allowed Petitioner a private investigator to assist him in preparing a defense. Petitioner averred at a pretrial hearing that the investigator had

> visited the alleged crime scenes, both in Round Rock that I have going to trial here on Count One and Count Two. He furnished me with information of the diagram of the building. He made phone calls to McLennan County District Attorney's Office. He made phone calls to Calhoun County and Nueces County and spoke with investigators there.

*Id.*, Exh. 11 at 20.

Petitioner moved to sever the trials on the two counts charged in the indictment, which motion was the subject of a hearing conducted May 6, 2011. *Id.*, Exh. 10 at 4-6. At that hearing, the State announced its willingness to sever the counts and proceed first on Count One of the indictment. *Id.*, Exh. 10 at 5. The State indicated an intent to proceed to trial on Count Two after the trial on Count One, regardless of the outcome of the first trial, and to have the court order any sentences be served consecutively. *Id.* The prosecutor further stated:

> And I'd also like to clarify, Judge, that the defendant be admonished that even though these cases—these counts will be tried separately, that evidence regarding both, either one of those offenses, could be admitted against him in each trial as either evidence under 404(b) or, obviously, in punishment.

*Id.*, Exh. 10 at 6. The motion to sever was granted. *Id.*, Exh. 10 at 47.

At the hearing on May 6, 2011, Petitioner inquired as to whether the State would offer him a plea bargain. *Id.*, Exh. 10 at 42. In response to Petitioner's inquiry, the prosecutor stated:

> We have not entered into those negotiations. If the defense wishes to enter into those negotiations, I think what I would probably do is put some basics on the record and ask that he send us a written proposal if he chooses to make an offer to plead guilty. And the things that I would put on the record for doing that is that the defendant is

currently charged with two counts in our county of aggravated robbery with a deadly weapon, and has a deadly weapon paragraph that is here. He is charged as a habitual offender. Previously, during the discovery process in February, we did go through the multiple pen packets and priors. The defendant did have an opportunity to review all those. So he's aware of how he is charged; that the range of punishment for a habitual offender for aggravated robbery is 25 years to life; that the offense—he must serve half of the time before becoming eligible for parole. *I will also state for the record that the defendant has been charged in I believe at least two other counties of aggravated robberies.* I have been in contact, one by phone call and one by letter, of the prosecutors in those counties. I believe, though I can not promise, that I could enter into a negotiation where we could run something concurrently on all the cases. Obviously, the minimum here is 25 years on aggravated robbery. And this is not a minimum case, especially with all the extraneous robberies.

*** 

I will put on the record that, typically, these types of offenses, when we plead them, we're looking at 40 years. The minimum is 25, but when we have all the other robberies as well—I think I could probably work something out with the counties where they would agree to run theirs [concurrently]. And I would have all of that, one way or the other, approved before the defendant decided to enter into a plea, if that's something he wished to do.

*Id.*, Exh. 10 at 43-44 (emphasis added). Petitioner then stated that he would take all of the information provided by the prosecutor into consideration. *Id.*, Exh. 10 at 44. The trial court reiterated at the close of the hearing that the motion to sever was granted and the prosecutor reiterated that, as a result of the severance, the State intended to "stack" the sentences if Petitioner was found guilty on both counts of aggravated robbery. *Id.*, Exh. 10 at 47-48.

At a hearing conducted August 8, 2011, one week prior to trial, Petitioner sought to subpoena Gracie Archer, who was on the prosecution's witness list and was referred to as "the Port Lavaca victim from that robbery." *Id.*, Exh. 11 at 7. Petitioner also sought to subpoena Evette Garcia, who was also on the prosecution's witness list. *Id.*, Exh. 11 at 10. Petitioner sought to subpoena these witnesses because the State intended to introduce evidence of "extraneous offenses" at Petitioner's

trial. *Id.*, Exh. 11 at 8, 11, 13. The prosecution averred that extraneous offense testimony might be offered during the guilt phase of the trial to show modus operandi, identity, and common scheme. *Id.*, Exh. 11 at 27-28. Petitioner moved to have all evidence of extraneous offenses suppressed. *Id.*, Exh. 11 at 27.

On the first day of trial, prior to the selection of a jury, the trial court considered Petitioner's motion in limine. The prosecutor described the motion as follows:

> But in terms of the general gist of the motion is not to allude to a robbery in Nueces County on or about June 9th; the robbery in Port Lavaca on or about June 16th; the robbery in Waco, McLennan County, on or about June 23. I have no objection to approaching the bench prior to eliciting any information about any of those prior robberies. He also lists the robbery that's here in Williamson County, he has the date a little off. *But it's my understanding that now we have combined those two so we do intend to go into obviously both of the Williamson County robberies.*
>
> *MR. SCHNEIDER: I understand that, Your Honor.*

*Id.*, Exh. 12 at 7 (emphasis added). The record reflects that, in the presence of the voir dire panel, the Court stated: "The case that we have on trial this week is a criminal cause of action which the defendant is charged with aggravated robbery, alleged to have occurred on or about the 5th day of June in 2010 in Williamson County, Texas." *Id.*, Exh. 12 at 17. The trial court made no mention of the second robbery at that time. After the jury was selected, the indictment recited before the jury included both offenses. *Id.*, Exh. 13 at 18-19.

Petitioner represented himself at trial, with "standby," or advisory counsel present. Petitioner did not present any witnesses or offer any testimony in his defense. *Id.*, Exh. 14 at 19. In his closing argument Petitioner allowed he was guilty of committing the robberies, but he maintained that there was insufficient evidence to establish, beyond a reasonable doubt, that he possessed a gun during the commission of the robberies. *Id.*, Exh. 14 at 35-39. The jury charge included an instruction on the

lesser included offense of robbery. *Id.*, Exh. 59 at 4-5. The jury deliberated for a little more than one hour before returning guilty verdicts. *Id.*, Exh. 14 at 43-44; Exh. 59 at 98. The jury also found Petitioner used or exhibited a deadly weapon, a firearm, during the commission of each offense. *Id.*, Exh. 59 at 118 & 120. The jury also found the three alleged penalty enhancements to be true. *Id.*, Exh. 43 at 127-28. The jury was instructed to return a sentence of not less than 25 years and not more than 99 years or life imprisonment, and returned sentences of life imprisonment on both counts of conviction on August 25, 2011. *Id.*, Exh. 43 at 123, 127-28.[1]

Petitioner, through counsel, moved for a new trial. *Id.*, Exh. 43 at 140 & 146; Exh. 59 at 137, which motion was denied by operation of law. *Id.*, Exh. 45 at 28. Petitioner, through counsel, appealed his convictions and sentences, asserting there was insufficient evidence to support his convictions for aggravated robbery because there was "no proof" that he used or exhibited a deadly weapon during the robberies. *Schneider*, 440 S.W.3d at 841. The Texas Court of Appeals denied relief, and the Texas Court of Criminal Appeals refused a petition for discretionary review. Document 13, Exh. 59 at 89.

Petitioner filed a state application for writ of habeas corpus, asserting the same claims for relief stated in his federal habeas petition. Document 13, Exh. 59 at 6-37. The trial court ordered the parties to respond to designated issues, including whether the factual allegations contained in the application were accurate, and whether the claims were "cognizable as raised." *Id.*, Exh. 59 at 49.

---

[1] The sentences were ordered to be served consecutively to a 20 year term of imprisonment imposed by the 299th District Court for Travis County, Texas, on a conviction for manufacturing methamphetamine; Petitioner was on parole from this sentence when he committed the bank robberies. Document 13, Exh. 43 at 131; Document 16 at 7. In his federal habeas petition, Petitioner also states that he is serving a 70-year sentence imposed by the 347th Judicial District of Nueces County, Texas, being served concurrently with the sentences he challenges herein. Document 1 at 4.

Upon reviewing Petitioner's and the State's responses regarding these issues, the trial court found that Petitioner's claims regarding severance and *Brady* violations were procedurally barred because they had not been raised is his appeal and alternatively, that the claims were without merit. *Id.*, Exh. 59 at 88-94. The state court concluded that Petitioner's claim of error by the Texas Court of Appeals was waived because he did not seek a rehearing or state this claim in his petition for discretionary review in the Texas Court of Criminal Appeals.

The state trial court found and concluded:

[claim regarding severance]
(applicant's credibility)

15. . . . This Court further finds that Applicant's misrepresentations to this Court while representing himself in pre-trial proceedings calls directly into question his credibility in the proceedings related to the instant application.

19. Even if this claim were not barred, it would fail on its merits.

\*\*\*

26. *Given the number of times Applicant urged his motion to sever, the number of opportunities Applicant had to object to the counts be tried together, the wording used by the prosecution during the discussions regarding the trial proceedings, and this Court's knowledge of the practices of negotiations and discussions of procedure conducted during trials in this Court, the Court hereby finds that the State and Applicant reached an agreement to proceed in this manner, presumably to avoid the possibility that this Court could order the punishments for each count to run consecutively. The Court notes the State's statement of intent to request such an order. This Court finds any assertions by Applicant that may be construed to the contrary not credible.*

27. Further, even if Applicant had presented his claims to the Court of Appeals, his claim would fail because by failing to object or make a bill of exception. Applicant has waived any basis upon which to complain about the lack of a severance. . . .

28. In addition, even if Applicant's claims regarding severance were not barred by his failure to present them to the Court of Appeals, and not waived by his failure to object, Applicant has not shown that he was harmed by the severance such that the statutory violation rose to the level of a constitutional violation entitling him

to relief. He received concurrent sentences rather than running the risk that with separate trials he might have had his sentences run consecutively. . . .

29. Thus, even if this claim were not barred for failing to present it to the Court of Appeals, it would fail because it is without merit and because Applicant has failed to meet his burden of proof thereon.

(statement of Evette Garcia)

30. Applicant asserts that the State never disclosed to him the existence of a statement of Evette Garcia referenced in the report attached to his Memorandum in support of his application, which appears to be a Corpus Christi Police Department report regarding the robbery to which Ms. [Garcia] testified during the punishment phase of the case.

31. Given the multiple session[s] of discovery provided to defendant, including references to police reports, this court finds lacking in credibility Applicant's assertion that he did not receive the report at issue in discovery.

32. Further, even if the State had withheld the report, the language referenced is not exculpatory, mitigating, or impeachable evidence because it sets forth the exact same facts to which Ms. Garcia testified during punishment, that she did not see a gun but saw Applicant possess a bag that she believed had a weapon within it.[]

33. Thus, even if this claim were not barred for failing to present it to the Court of Appeals, it would fail because it is without merit and because Applicant has failed to meet his burden of proof thereon.

(statement of Grace Archer)

34. Applicant asserts that the State never disclosed to him the existence of a statement of Gracie Archer referenced in the report attached to his Memorandum in support of his application, which appears to be police report regarding the robbery to which Ms. Archer testified during the punishment phase of the case.

35. Given the multiple session[s] of discovery provided to defendant, including references to police reports, this court finds lacking in credibility Applicant's assertion that he did not receive the report at issue in discovery.

36. Further, to prevail on a claim of a due process violation for failure to disclose evidence, Applicant must show the withheld evidence was material. Part of that materiality requirement is a showing that the evidence at issue could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *See, e.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963). . . .

37. The State relied not only on Ms. Archer's testimony, her picking Applicant out of a photo line-up, and her in-court identification of Applicant, but also upon photographs or still images from the surveillance video [] recorded the robbery about which Ms. Archer testified.. . . .

38.Thus any impeachment elucidated by the statement at issue would not put the case in so different a light as to undermine confidence in the verdict.

39.Thus, even if this claim were not barred for failing to present it to the Court of Appeals, it would fail because it is without merit and because Applicant has failed to meet his burden of proof thereon.

(complaint regarding Third Court of Appeals)
40. Applicant's complaint regarding the opinion issued by the Third Court of Appeals is not cognizable upon a writ of habeas corpus.

***

42. The proper remedy for a complaint regarding an intermediate appellate court's understanding and reliance of a fact at issue is to file a timely motion for a rehearing and/or file a petition for discretionary review with this court.

43. Applicant failed to file a motion for rehearing. Applicant[] did file a petition for discretionary review, which the Court of Criminal Appeals denied on June 11, 2014. . . .

44. Thus, Applicant has not met his burden of proof as to any basis upon which this complaint entitles him to relief.

*Id.*, Exh. 59 at 88-94 (emphasis added and internal citations omitted).

Petitioner sought review of this decision by the Texas Court of Criminal Appeals. *Id.*, Exh.

59 at 10. The Texas Court of Criminal Appeals denied the application for a writ of habeas corpus

on the findings of the trial court, without written order. *Id.*, Exh. 58.

**C.      Petitioner's federal habeas claims**

Petitioner argues that he is entitled to federal habeas relief because:

1.      The trial court erred by failing to sever the two counts of aggravated robbery.

2.     The prosecution violated the holding in *Brady v. Maryland* by failing to disclose an incident report indicating that Ms. Garcia did not see Petitioner with a gun during the commission of an extraneous offense, which Petitioner contends contradicts her trial testimony; and failing to disclose a police report indicating that Ms. Archer initially described the perpetrator of an extraneous offense, later identified as Petitioner, who is white, as Hispanic.

3.     The Texas Court of Appeals' ruling in his direct appeal violated his constitutional rights because it incorrectly stated that Petitioner was seen with a gun on the day of the first robbery.

Respondent argues that Petitioner's federal habeas claims are procedurally barred, and that the state court's denial of the claims was not unreasonable, and that the claims are without merit.

## ANALYSIS

### A.    Procedural default

The doctrine of procedural default requires a federal habeas court to refuse review of all claims the state courts found defaulted pursuant to "an independent and adequate state procedural rule," unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). A state procedural ground is "adequate" when the procedural rule is "strictly and regularly followed" and applied consistently in the vast majority of similar cases. *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). Petitioners bear the burden of demonstrating that the relevant rule was not firmly established or regularly followed. *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). A state procedural ground is "independent" if the last reasoned state court

opinion clearly and expressly indicates that its decision is independent of federal law. *Reed v. Scott*,

70 F.3d 844, 846 (5th Cir. 1991).

A state court's reliance on a procedural default to dismiss a claim is an independent and

adequate state ground which bars federal habeas review even if the state court addresses the merits

of the claim in the alternative. *Harris*, 489 U.S. at 264 n.10; *Corwin v. Johnson*, 150 F.3d 467, 473

(5th Cir. 1998); *Sawyers v. Collins*, 986 F.2d 1493, 1499 (5th Cir. 1993). However, the Fifth Circuit

Court of Appeals has also stated that "federal review of a claim is procedurally barred [only] if the

last state court to consider the claim expressly and unambiguously based its denial of relief on a state

procedural default." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (citing *Coleman*, 501 U.S.

at 729); *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). The Supreme Court's opinion in *Ylst v.

Nunnemaker*, 501 U.S. 797 (1991), addressed the problem "that arises when a state court issues an

unexplained order, neither disclosing nor insinuating the reason for its judgment."

> The [Supreme] Court created a presumption to be applied by federal courts when
> they are unable to determine whether the state court opinion "fairly appeared to rest
> primarily upon federal law." *See* [*Ylst*, 501 U.S.]. at 803, 111 S.Ct. 2590 (quoting
> *Coleman*, 501 U.S. at 740, 111 S.Ct. 2546). Termed the "look through" doctrine, this
> presumption enables federal courts to ignore–and hence, look through–an
> unexplained state court denial and evaluate the last reasoned state court decision.
> When one reasoned state court decision rejects a federal claim, subsequent
> unexplained orders upholding that judgment or rejecting the same claim are
> considered to rest on the same ground as did the reasoned state judgment. The Court
> explained:
>
>> The maxim is that silence implies consent, not the opposite-and
>> courts generally behave accordingly, affirming without further
>> discussion when they agree, not when they disagree, with the reasons
>> given below. The essence of unexplained orders is that they say
>> nothing. We think that presumption which gives them no
>> effect–which simply "looks through" them to the last reasoned
>> decision–most nearly reflects the role they are ordinarily intended to
>> play. *Id.* at 804, 111 S.Ct. 2546.

*Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

Petitioner presented his federal habeas claims to the Texas state courts in his application for a writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07. The state trial court made findings of fact and conclusions of law pursuant to Article 11.07(3)(d). The trial court found: "Applicant was aware of all relevant facts giving rise to his first three claims when his appeal was pending, and could have argued any or all of his grounds on appeal. Therefore, he is now barred from raising them in an application for writ of habeas corpus." Document 13, Exh. 59 at 78. With regard to the fourth claim, the state trial court concluded that Petitioner had defaulted this claim for failing to raise it in a motion for a rehearing or in his petition for discretionary review of the Court of Appeals decision. *Id.*, Exh. 59 at 82-83. The state court concluded that all of Petitioner's claims were defaulted by his failure to raise them in a procedurally correct manner, and also found the first three claims without merit, and recommended that the writ be denied. *Id.*, Exh. 59 at 85-94. The Texas Court of Criminal Appeals denied the application for a writ of habeas corpus without written order, on the findings of the trial court. *Id.*, Exh. 58.

Petitioner's federal habeas claims were found procedurally barred by state court procedural rules. Although the trial court found the claims both procedurally barred and the first three claims without merit, the state trial court's consideration of the merits of the claims does not necessarily vitiate the procedural default of the claims for the purpose of federal habeas review. When a state court finds that a claim is procedurally barred but then reaches the merits of that claim in the alternative, the state court's reliance on the procedural default may still constitute an independent and adequate ground which bars federal habeas review. *Harris*, 489 U.S. at 264 & n.10; *Allen v. Stephens*, 805 F.3d 617, 636 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 2382 (2016); *Cotton v.*

*Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003); *Jasper v. Thaler*, 765 F. Supp. 2d 783, 828 (W.D. Tex. 2011) (compiling cases so holding).[2]

The Court may only grant relief on the merits of Petitioner's defaulted claims if Petitioner can demonstrate cause for the default and actual prejudice arising from the default, or if he can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014); *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996). To establish "cause," a petitioner must show that some external factor impeded his ability to comply with the state's procedural rules, or that his counsel rendered ineffective assistance. *Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of external impediments include active governmental interference or the reasonable unavailability of the factual or legal basis for the claim. *Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008). *See also Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008)

---

[2] However, in *Bledsue*, in the context of a section 2254 case arising in Texas in which the intermediate appellate court denied the defaulted claims on the merits rather than the procedural bar, the Fifth Circuit Court of Appeals stated:

> [T]o prohibit our collateral review the state court must have expressly relied on the procedural bar as the basis for disposing of the case. Here, the disposition by the Court of Criminal Appeals presented no such expression and no explanation, so we cannot identify the element of clear and express reliance on a state procedural rule to preclude review in federal court.

*Bledsue*, 188 F.3d at 256 & n.13 (noting that the Texas Court of Criminal Appeals has stated that a "denial," as compared to a "dismissal," is a decision on the merits). In this matter, the Texas Court of Criminal Appeals held Petitioner's state habeas application was "DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT WITHOUT HEARING." Document 13, Exh. 58. The trial court found Petitioner's claims both procedurally barred and without merit. In an abundance of caution, to address the situation in which the Court concluded that the denial of Petitioner's claims by the Texas Court of Criminal Appeals was not expressly and unambiguously based on a state procedural bar, the undersigned will address the merits of Petitioner's claims for relief.

(finding both cause and prejudice with regard to an *Atkins* claim the petitioner failed to exhaust in the Texas state courts).

To establish a fundamental miscarriage of justice, the petitioner must make a "persuasive showing" that they are actually innocent, i.e., that they did not commit the crime of conviction. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir. 2004); *Woodard v. Thaler*, 702 F. Supp. 2d 738, 752 (S.D. Tex. 2010). A habeas petitioner who seeks to surmount a procedural default through a showing of actual innocence must support his allegations with new, reliable evidence that was not presented at trial and establishing that, more likely than not, in light of the new evidence no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 537 (2006); *Callins v. Johnson*, 89 F.3d 210, 213, 214 (5th Cir. 1996). Additionally, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Rocha v. Thaler*, 626 F.3d 815, 824 (5th Cir. 2010), *quoting Schlup v. Delo*, 513 U.S. 298, 315 (1995).

In his reply, Petitioner does not explicitly assert cause for his procedural default of any of his federal habeas claims in the state courts. With regard to prejudice and his severance claim, Petitioner asserts the failure to sever his trials required him to go to trial on the second count of the indictment unprepared. Petitioner contends there was "no disclosure on [Count Two]." Document 16 at 10-11. With regard to the default of his *Brady* claim involving Ms. Garcia, Petitioner implies he was prejudiced by the inability to impeach her because at the conclusion of his later trial on the June 9 robbery he was found guilty only of robbery, rather than aggravated robbery involving a deadly weapon. *Id.* at 13. Petitioner does not assert that he is actually innocent of either of the Williamson

County robberies, but instead asserts there was no evidence he was armed during these robberies. *Id.* at 6-10, 11-13.

Petitioner has not established cause for his procedural default of his claim regarding severance. There was no external impediment which prevented Petitioner from raising this claim in his direct appeal. Petitioner was not prejudiced by the default because it is unlikely that, had the trials been severed, the outcome would have been different. Substantial testimony was presented from which the jury could reasonably infer that Petitioner carried a gun in both robberies. Petitioner was provided with substantial discovery with regard to the second robbery. With regard to his claim regarding the Court of Appeals' alleged misstatement of fact, Petitioner does not offer any basis for a finding of cause for his default of the claim or prejudice arising from the default of this claim. Petitioner has not established that he is actually innocent of the crimes of conviction and, accordingly, no fundamental miscarriage of justice will occur absent consideration of the merits of the claims.

To establish "cause" for the procedural default of Petitioner's *Brady* claim, Petitioner must make a convincing showing that the factual or legal basis for the claim was not available until it was too late to raise the claim in the state courts. *Robison v. Johnson*, 151 F.3d 256, 263 (5th Cir. 1998); *McGowen v. Thaler*, 717 F. Supp. 2d 626, 670 (S.D. Tex. 2010). The Texas trial court found Petitioner's allegation that he did not receive these documents during discovery not credible. Document 13, Exh. 59 at 92. Federal courts in habeas corpus proceedings are required to accord a presumption of correctness to state court findings of fact, unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Emery v. Johnson*, 139 F.3d 191, 199 (5th Cir. 1997); *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997). The presumption is especially strong

when, as here, the state habeas court and the trial court are identical. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996). Additionally, although Petitioner avers he did not have the witnesses' statements at the time of his trial (a claim rejected as a matter of fact in Petitioner's state habeas action), the Texas Third Court of Appeals did not issue a decision in his appeal until November 21, 2013, before which time Petitioner did have these statements and was represented by counsel and, accordingly, Petitioner could presumably have amended or supplemented his pleadings and raised his *Brady* claims in his direct appeal.[3]

In *Strickler v. Greene*, the Supreme Court noted that the cause and prejudice standard for overcoming a procedural default "parallels" two of the three components of a *Brady* violation, i.e., whether the *Brady* evidence was willfully or inadvertently suppressed, satisfying the cause requirement, and whether the evidence was material, satisfying the prejudice requirement. 527 U.S. 263, 281-82 (1999). The Supreme Court noted that, if the evidence was not found to be "material" for *Brady* purposes, the suppression of the evidence "did not give rise to sufficient prejudice to overcome the procedural default." *Id.* As explained more thoroughly herein, the evidence Petitioner alleges was wrongfully withheld was not material for *Brady* purposes and, accordingly, Petitioner has not satisfied the prejudice requirement for overcoming his procedural default of his *Brady* claims.

---

[3] Petitioner alleges he obtained these statements prior to his trial for one of the other June 2010 robberies. Document 1 at 13-16. Petitioner was indicted for the robbery in Nueces County, wherein Ms. Garcia was a witness, on April 19, 2012, and his direct appeal in that matter was docketed September 24, 2012. *Schneider v. State*, No. 13-12-00575-CR, 2013 WL 2300995, at *1 (Tex. App.–Edinburg 2013, no pet.) & 2013 WL 1224600 (Petitioner's appellate brief in that matter) & docket in *Schneider v. State*, 13-12-00575-CR ( available in Westlaw). Accordingly, Petitioner presumably had acquired these statements prior to September 24, 2012, a full year before the Court of Appeals issued its ruling.

Petitioner has not established cause for, nor prejudice arising from, his procedural default of his federal habeas claims. Petitioner has not established that, given the weight of the evidence against him, any of the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Petitioner has not established that a miscarriage of justice will occur absent the Court's consideration of the merits of his procedurally defaulted claims. Petitioner does not present new, reliable evidence that was not presented at trial showing that, more likely than not, in light of the new evidence no reasonable juror would have voted to find him guilty beyond a reasonable doubt. Accordingly, because his federal habeas claims are procedurally defaulted, the Court need not consider the merits of the claims and may not grant relief on the claims.

**B.    Merits**

**1.    Severance**

The record reveals that, on the date of his trial, Petitioner knew that he would be going to trial on both counts of the indictment, as indicated by the following colloquy prior to voir dire:

> [THE PROSECUTOR]:        . . . But it's my understanding that now we have combined those two so we do intend to go into obviously both of the Williamson County robberies.
>
> MR. SCHNEIDER: I understand that, Your Honor.

Document 13, Exh. 12 at 7. As previously noted, the state trial court found Petitioner's claim that he did not know that he would be going to trial on both charges not credible, a finding of fact entitled to deference by this Court.

Additionally, Petitioner has not established that the failure to sever his trials violated his federal constitutional rights. When considering a habeas claim based on the denial of severance, the Court must limit its inquiry to whether Petitioner's federal constitutional right to a fair trial was

18

violated. *Breeland v. Blackburn*, 786 F.2d 1239, 1240 (5th Cir. 1986). The Fifth Circuit Court of Appeals has held that habeas relief is only appropriate when the simultaneous trial of more than one offense actually rendered the trial fundamentally unfair and violative of due process. *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979); *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976). A petitioner must demonstrate prejudice arising from the failure to sever to establish that their trial was rendered fundamentally unfair. *Breeland*, 786 F.2d at 1242; *Alvarez*, 607 F.2d at 685. The federal courts have recognized that "whether to grant a motion to sever is within the discretion of the trial court," and that the trial court is "required to sever only in cases of compelling prejudice." *Procter v. Butler*, 831 F.2d 1251, 1256 (5th Cir. 1987). "[T]he burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." *Id.*

Petitioner contends he was prejudiced by the failure to sever because he was not prepared to defend against the charges involving the second Williamson County robbery (Count Two of the indictment), because he had not been provided with discovery regarding this incident. Document 1 at 12. The record indicates that Petitioner was provided with discovery regarding both counts of the indictment prior to trial, as evidenced by the numerous pretrial hearings on Petitioner's motions regarding discovery and the State's intent to introduce evidence of "extraneous incidents." Document 13, Exh. 9 at 16; Exh. 10 at 7-12, 19-22, 23-24, 25-31, 35-38; Exh. 11. When the evidence of the guilt of the petitioner is overwhelming, as in this matter, there is little likelihood of prejudice resulting from a failure to sever. *Breeland*, 786 F.2d at 1242. Because Petitioner has not established compelling prejudice with regard to the failure to sever, *Procter*, 831 F.2d at 1257 (rejecting "speculative possibility" of prejudice and affirming denial of habeas relief), Petitioner was not

deprived of his right to a fair trial because his trials were not severed and this claim may be denied on the merits.

### 2. *Brady* violations

Petitioner asserts the State violated the doctrine of *Brady v. Maryland* by failing to disclose an incident report indicating that Ms. Garcia did not see Petitioner with a gun during the commission of an extraneous offense, which Petitioner contends contradicts her trial testimony. Petitioner also maintains the State failed to disclose a police report indicating that Ms. Archer described the suspect in an extraneous offense, purported to be Petitioner, as Hispanic (Petitioner is Caucasian). Petitioner asserts the failure to disclose these reports violated his right to due process of law pursuant to the United States Supreme Court's decision in *Brady v. Maryland*, 83 S.Ct. 1194 (1966), which requires the prosecution to disclose exculpatory or impeachment evidence in its possession to the defense.

The document allegedly withheld with regard to Ms. Garcia is an incident/investigation report regarding a Corpus Christi bank robbery occurring June 9, 2010. This report states: "[Ms. Garcia] said she never saw a gun or any weapon and OF-1 never made any threats but she did see an object in one of the bags that could have been a weapon." Document 13, Exh. 59 at 34. The document allegedly withheld with regard to Ms. Archer is an incident report regarding a robbery occurring at a Port Lavaca bank on June 16, 2010. This report states: "[Ms. Archer] believed the subject possibly had a gun and feared for her safety if she did not do what he requested. The suspect never presented a weapon in commission of the robbery. Archer described the suspect as a Hispanic male . . . light complected . . . . " *Id.*, Exh. 59 at 35. Petitioner alleges that he only became aware of these statements when he was tried for another crime involving these witnesses. Document 1 at 13-14 & 15-16.

The elements of a *Brady* claim are: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material" to the defendant's guilt or punishment, i.e., prejudice must have ensued as a result of the suppression. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The good or bad faith of the prosecution in suppressing the evidence is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady*, 373 U.S. at 87). However, "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002).

With regard to the element of suppression, there is no evidence in this matter that the reports were either willfully or inadvertently withheld from Petitioner. There is no evidence in the record that the documents were in the prosecutor's possession at the time of Petitioner's trial. The Court notes that the state trial court, in its findings of fact in Petitioner's state habeas proceedings, found Petitioner's allegation that he was not provided with this discovery not credible. The record in this matter reflects that Petitioner was provided with discovery regarding these witnesses to the extent required by the Texas Rules of Criminal Procedure. Document 13, Exh. 11. Petitioner knew prior to his trial that both Ms. Garcia and Ms. Archer would be testifying for the State. *Id.*, Exh. 11 at 7 & 10; Exh. 43 at 47-50 (State's witness list).

To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching. . . ." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Petitioner contends the withheld evidence was impeaching because the statements contradict the witnesses' testimony. It is arguable whether the evidence with regard to Ms. Garcia was

impeaching, as her statements in the investigative report and her testimony at trial were not contradictory. It is also arguable whether Ms. Archer's statement in the investigatory report, that she initially believed the perpetrator might be Hispanic, would render her testimony that Petitioner was the perpetrator less believable.

Additionally, the information was not material to Petitioner's guilt or sentencing. Evidence is material if there is a "reasonable probability" that the result of the proceeding would have been different if the evidence had been disclosed. *Banks*, 540 U.S. at 699; *DiLosa v. Cain*, 279 F.3d 259, 263 (5th Cir. 2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Dickson v. Quarterman*, 462 F.3d 470, 477 (5th Cir. 2006).

> The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. Undisclosed evidence that is merely cumulative of other evidence is not material, while the impeached testimony of a witness whose account is   strongly corroborated by additional evidence supporting a guilty verdict . . . generally is not found to be material either. Conversely, a *Brady* violation is more likely to occur when the impeaching evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration.

*Rocha v. Thaler*, 619 F.3d 387, 396-97 (5th Cir. 2010) (internal quotations omitted), *clarified on denial of reconsideration*, 626 F.3d 815 (5th Cir. 2010).

The evidence with regard to Ms. Garcia is not material. This statement by Ms. Garcia contains the same facts to which Ms. Garcia testified. Ms. Garcia testified in the guilt phase that she saw Petitioner at an unspecified location on June 9, and that he had his hand in a white bag, and that she believed that there was a gun in the white bag.  Document 13, Exh. 14 at 17 ("Q. And when you saw Mr. Schneider did you see him in possession of an item that appeared to be a firearm in a translucent white grocery type bag? A. Yes."). She then identified Petitioner as the person she saw on June 9. *Id.*. She was shown a surveillance photo taken on June 9, and she identified the individual

shown in the photo as Petitioner as she saw him on June 9. Ms. Garcia stated that, viewing the photo, the item in the white bag appeared to be a gun and that Petitioner was holding the item in the bag. *Id.*, Exh. 14 at 18 ("Q. In that photograph can you clearly see the item that's in his hand in the translucent white grocery bag and that appears to be a firearm? A. Yes."). During the punishment phase, Ms. Garcia testified that on June 9, 2010, Petitioner came into the bank in Corpus Christi where she worked as a teller, put an object in a plastic bag on the counter, and told her "This is a robbery." *Id.*, Exh. 14 at 66-67. Ms. Garcia stated that the item in the bag on the counter appeared to be a handgun. *Id.*, Exh. 14 at 67-68.

Ms. Archer did not testify at the guilt phase of Petitioner's trial, but did testify during the punishment phase. *Id.*, Exh. 14 at 80-94. Ms. Archer testified that on June 16, 2010, Petitioner came into the bank in Port Lavaca where she worked as a teller, told her he had a gun and that he was perpetrating a robbery. *Id.*, Exh. 14 at 82-85 ("Q. Is that when he says he has a gun? A. I guess he could see it on my face, maybe, and he was like 'I have a gun, too.'"). Ms. Archer offered an in-court identification of Petitioner as the perpetrator of the robbery. The record demonstrates that the allegedly suppressed statements made by Ms. Garcia and Ms. Archer in the punishment phase were not material because they were cumulative. Both women's identifications of Petitioner as the individual who perpetrated the robberies were corroborated by still photos captured from the banks' video surveillance systems. *Id.*, Exh. 14 at 86–94; Exh. 18 at 95–128.

The statements by Ms. Garcia and Ms. Archer were strongly corroborated by additional evidence supporting a guilty verdict and the imposition of the maximum sentence. Both Ms. Hunter and Mr. Robles testified that they believed Petitioner possessed a gun at the time of the robberies. Document 13, Exh. 13 at 39-40, 58 (Ms. Hunter stating upon cross-examination: "I am positive that

there was a weapon in that bag."), 148 (Mr. Robles testifying that Petitioner stated: "And I do have a gun."), 149-50 (Mr. Robles testifying "No. I didn't see a gun," but also stating he thought Petitioner had a gun because he "[took] him at his word" and that Petitioner's "left hand stayed constantly on his left side," and that he thought the gun was in the waistband of Petitioner's pants), 168 (Mr. Robles testifying on cross-examination "No, I didn't see a weapon," but was "75 percent sure" Petitioner did have a weapon). A substantial amount of other evidence was presented during the punishment phase of the trial regarding Petitioner's commission of another bank robbery and other felonies, and his involvement in a prison "Security Threat Group." *Id.*, Exh. 14 at 95-101 (Mr. Stevens' testimony about a robbery in Killeen on June 23, 2010), 103-143 ( items which Petitioner stipulated were in his possession at the time of his arrest indicating the crimes of identity theft and drug possession), 143-153 (testimony of Mr. Hart, a Security Threat Group Coordinator for Region Six of the Texas Department of Criminal Justice, who testified that Petitioner had been confirmed as a member of the Aryan Brotherhood and was still active in the Aryan Brotherhood), 169 (testimony of Mr. De La Vega that Petitioner was then still "[v]ery active" in the Aryan Brotherhood). Accordingly, the impeaching evidence did not seriously undermine the testimony of a key witness on an essential issue, and there was strong corroboration of these two witnesses' testimony, and there was not a reasonable probability that this evidence, even if the state failed to disclose it, would have affected the verdict or sentence delivered by the jury.

### 3.    Court of Appeals' decision

Petitioner contends the Texas Court of Appeals' statement that he was seen with a gun on the day of the first robbery was a misstatement of a deciding fact, depriving him of a fair and just appeals process. Petitioner asserts that the following was an incorrect statement of fact: "From the

evidence that he was seen in possession of a gun on the day of the first robbery, and his statement that he possessed a gun during the second robbery, the jury could reasonably infer that he used a deadly weapon during both robberies."*Schneider*, 440 S.W.3d at 843. Petitioner argues that the statement "he was seen in possession of a gun on the day of the first robbery," was based on the testimony of Ms. Garcia, who saw him with a gun on June 9, several days after the crime alleged in the first count of the indictment. Petitioner has not identified a federal constitutional right that was violated by this alleged error. In *Lawrence v. Lensing*, the Fifth Circuit stated:

> The United States Constitution does not generally mandate the right to appeal a criminal conviction. . . . A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. It is questionable that Lawrence's right to appeal argument raises a federal constitutional claim.

42 F.3d 255, 258 (5th Cir. 1994) (internal citations omitted).

"It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all." *Griffin v. Illinois*, 351 U.S. 12, 18 (1956). Although the Constitution does not require the states to afford criminal defendants appellate review of a criminal conviction, when a state provides a right to appeal it must meet the requirements of due process and equal protection. *Douglas v. California*, 372 U.S. 353, 355-57 (1963); *Griffin*, 351 U.S. at 18; *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980).

The brunt of Petitioner's claim is a challenge to a factual finding of the Texas Court of Criminal Appeals. This issue is not of federal constitutional proportions. The United States Supreme Court has never held that a state appellate court's misstatement of fact violates a criminal defendant's right to due process or equal protection of the law. Accordingly, Petitioner has not stated a claim that his federal constitutional rights were violated and this claim does not provide a basis for

federal habeas relief. The Texas court's action did not contravene the Constitution, laws, or treaties of the United States and, accordingly, Petitioner is not entitled to habeas relief on this claim even if the Texas court so erred. *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

## CONCLUSION

Petitioner procedurally defaulted all of his federal habeas claims in the state courts. Petitioner has not established cause for, or prejudice arising from, his default of these claims. Petitioner has not established that a fundamental miscarriage of justice will occur absent consideration of the merits of the claims and, accordingly, the Court may not grant habeas relief on the claims stated in the petition. Additionally, all of Petitioner's federal habeas claims are without merit.

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's

constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985);

*Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED this 12th day of June, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE